[Cite as *State v. Chambers*, 2014-Ohio-390.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 99864**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## LONNIE CHAMBERS, JR.

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-568780

**BEFORE:** Jones, P.J., E.A. Gallagher, J., and Stewart, J.

**RELEASED AND JOURNALIZED:** February 6, 2014

**ATTORNEY FOR APPELLANT**

Christopher M. Kelley
75 Public Square
Suite 700
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

BY: Carl Sullivan
Assistant County Prosecutor
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

LARRY A. JONES, SR., P.J.:

**{¶1}** Defendant-appellant Lonnie Chambers appeals his conviction for felonious assault. We affirm.

### I. Procedural History and Facts

**{¶2}** In 2012, Chambers was charged with one count each of felonious assault and kidnapping. The matter proceeded to a bench trial at which the following pertinent evidence was presented.

**{¶3}** 60 year-old Kenneth Straka testified that Chambers was his boyfriend and had lived with him for the past six years. Neither man was employed, but Straka supported them with his social security disability checks.

**{¶4}** On the day of the assault, Chambers and Straka started drinking beer and wine; Straka testified that Chambers eventually graduated to 80-proof vodka. Both men were drunk. The men were in the hallway of their apartment when, according to Straka, Chambers, unprovoked, started punching him. Chambers repeatedly punched Straka in the face and also choked him. Straka testified that Chambers broke his ribs and a bone in his eye, and he remembered being on the ground, but could not remember if Chambers kicked him in the ribs. Straka testified he could not remember everything because Chambers just kept punching him. When Chambers went to use the bathroom, Straka escaped and called the police.

**{¶5}** Straka was transported to the emergency room by ambulance and admitted to the hospital. He received morphine to help with the pain and was released with a

prescription for two painkillers. He testified that he got a restraining order against Chambers and had had no contact with Chambers since the assault, except Chambers had written him three or four letters from jail.

{¶6} Straka admitted on cross-examination that he was manic depressive and bipolar and had not been taking his medication when the assault occurred.

{¶7} Lakewood police officers Robert Drake and Ryan Lavelle responded to the scene. Officer Drake observed "extensive injuries" to Straka's face, some of which appeared to be old, and noted that Straka was upset and had been drinking. Straka told the officer that his rib was hurting and that his "live-in boyfriend," Chambers, had assaulted him.

{¶8} When Officer Drake approached Chambers, he observed that he was highly intoxicated, had bloodshot eyes, had a strong odor of an alcoholic beverage on his breath, had slurred speech, was slightly incoherent, and was yelling and screaming. Officer Drake testified that he observed open scabs on Chambers's knuckles consistent with his having punched something. Chambers told the officer that he gave Straka a black eye but he had done so several days earlier.

{¶9} Officer Lavelle also noted Straka's black eye and that Chambers was intoxicated, unsteady on his feet, and had open scabs on his knuckles.

{¶10} Lakewood detective Scott Trommer interviewed Chambers shortly after he was arrested. Chambers told the detective that he did not remember what had happened. He admitted that he and Straka had argued in the past, but denied that the arguments ever turned physical. Chambers conceded he had been drinking all day but maintained

he did not remember assaulting Straka.

{¶11} Dr. Mourad El-Gazzer of Lakewood Hospital testified that he treated Straka for a broken rib and broken zygomatic arch (bone around the eye), hematomas in both eyes, and a concussion. He testified that Straka complained of seeing black spots, having nausea, vomiting, and blurred vision, and facial and chest pain. The doctor further noted that Straka had lost consciousness during the assault. Dr. El-Gazzer diagnosed Straka with a blunt fracture of the left zygomatic arch and an acute fracture to one of his ribs. He testified that he had different specialists consult to assess if there was any further damage. The doctor recommended follow-up care to Straka, including seeing a plastic surgeon for his eye.

{¶12} Chambers testified on his own behalf. He maintained that he was not Straka's boyfriend or "lover," and had never had "sexual relations" with him. He admitted he was drunk the night of the incident. According to Chambers, he was trying to sleep when Straka came in and started "groping" on him, so he punched him to get him away. After he punched him, Straka "bounced off the table." Chambers admitted to punching Straka "once or twice," but denied choking or kicking him. He stated "it was just a fight. I hit him with my hands. * * * I've been known to get drunk and punch walls too when I'm drunk."

{¶13} On cross-examination, Chambers stated that he had been diagnosed with depression, talked to himself, was an alcoholic, and would black out when he drank too much. He contended that he never told police his version of events: that he hit Straka because Straka was groping him, because he did not want to talk about "gay stuff." He

admitted that when he got drunk he sometimes would get mad and lose his temper. Chambers admitted:    "I mean, I punched him. Fighting. Yeah. I'm guilty of that. * * * I remember punching him."

{¶14} The trial court found Chambers guilty of felonious assault but acquitted him of kidnapping and sentenced him to two years in prison.

## II.   Law and Analysis

### Assignments of Error

[I].   The evidence was insufficient as a matter of law to prove beyond a reasonable doubt that Mr. Chambers was guilty of felonious assault under R.C. 2903.11(A)(1).

[II.] Plain error occurred with the admission of Mr. Chamber's [sic] prior bad acts testimony in violation of Article I, Section 16 of the Ohio Constitution and the Fourteenth Amendment to the United States Constitution.

[III.] Lonnie Chambers, Jr. was deprived his right to effective assistance of counsel guaranteed by Article I, Section 16 of the Ohio Constitution and the Sixth and Fourteenth Amendments to the United States Constitution by trial counsel's failure to zealously present Mr. Chambers' narrative and theory of the case.

[IV.] Lonnie Chambers, Jr. was denied his right to effective assistance of counsel guaranteed by Article I, Section 16 of the Ohio Constitution and the Sixth and Fourteenth Amendments to the United States Constitution when his attorney failed to object to inadmissible prior acts testimony.

### Sufficiency of the Evidence

{¶15} In the first assignment of error, Chambers contends that the state presented insufficient evidence of the element of "serious physical harm" necessary to convict him of felonious assault.

{¶16} In evaluating a sufficiency of the evidence argument, courts are not to assess

whether the state's evidence is to be believed but whether, if believed, the evidence against a defendant would support a conviction. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). The weight and credibility of the evidence are left to the trier of fact. *State v. Jackson*, 8th Dist. Cuyahoga No. 86542, 2006-Ohio-1938, ¶ 23.

**{¶17}** R.C. 2903.11(A)(1) provides that "no person shall knowingly cause serious physical harm to another or another's unborn." According to Chambers, although Straka suffered "significant injuries," his injuries did not rise to the level of serious physical harm. We disagree.

**{¶18}** Serious physical harm, as defined by R.C. 2901.01(A)(5), is any of the following:

(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;

(b) Any physical harm that carries a substantial risk of death;

(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;

(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;

(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.

{¶19} Straka testified that Chambers punched him multiple times and choked him until he lost consciousness and blacked out. Specifically, Straka testified that Chambers "punched me repeatedly, over and over in my face. He strangled me and broke all the blood vessels in [my left eye]. I had bruises all over my neck. I had a cracked rib and three fractured ribs, which is finally healed."

{¶20} Dr. El-Gazzer testified that he treated Straka after he was admitted to the hospital from the emergency room. Straka complained of nausea, vomiting, blurred vision, and a loss of consciousness, and suffered from a concussion, hematomas in both eyes, a fracture in the bone under his left eye and a fracture to his rib. His left eye was completely swollen shut and he complained of facial and rib pain.

{¶21} The doctor testified he had four or five different specialists consult with Straka to rule out further injuries. He also ordered a CAT scan and x-rays. To control his pain, the doctor prescribed morphine in the hospital and Tramadol and Celebrex once Straka was released from the hospital.

{¶22} In light of the above, we conclude that the state presented sufficient evidence to show that Chambers caused serious physical harm to Straka. This court has repeatedly determined that a factfinder does not err in finding serious physical harm where the evidence establishes the victim suffered injuries necessitating medical treatment. *State v. Andrews*, 8th Dist. Cuyahoga No. 93104, 2010-Ohio-3864, ¶ 18; *State v. Morris*, 8th Dist. Cuyahoga No. 90820, 2008-Ohio-5469, ¶ 30; *State v. Scott*, 8th Dist. Cuyahoga No. 81235, 2003-Ohio-5374; *State v. Davis*, 8th Dist. Cuyahoga No. 81170, 2002-Ohio-7068.

{¶23} Additionally, a loss of consciousness, "irrespective of its duration," satisfies the requirements for a temporary, substantial incapacity. *State v. Sales*, 9th Dist. Summit No. 25036, 2011-Ohio-2505, ¶ 19; *see also State v. Booker*, 2d Dist. Montgomery No. 22990, 2009-Ohio-1039, ¶ 16 (concluding "[t]emporary unconsciousness constitutes a temporary substantial incapacity, and therefore serious physical harm"); *State v. Swank*, 10th Dist. Franklin No. 81AP-749, 1982 Ohio App. LEXIS 12471 (Feb. 23, 1982) (concluding the state presented sufficient evidence of serious physical harm in that the victim was knocked temporarily unconscious after being struck and choked, her face was battered and bleeding, and her eye required six stitches); *State v. Chappell*, 8th Dist. Cuyahoga No. 79589, 2002-Ohio-676 (state presented sufficient evidence of serious physical harm when a defendant hit the victim over the head with a beer bottle, which caused a loss of consciousness and five stitches over the eye).

{¶24} Clearly, the fact that Straka suffered a broken bone under his eye, a broken rib, blurred vision, loss of consciousness, was prescribed morphine and other painkillers, was hospitalized overnight and saw several specialists for diagnosis and treatment presented sufficient evidence of the element of "serious physical harm." Therefore, the trial court properly overruled Chambers's motion for judgment of acquittal.

{¶25} The first assignment of error is overruled.

**Prior Criminal Conviction**

{¶26} In the second assignment of error, Chambers argues that the trial court committed plain error by admitting into evidence testimony with regard to his prior

attempted felonious assault conviction. Chambers concedes that because his attorney did not object to the admission of this evidence, he has waived all but plain error.

{¶27} Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. *State v. Long,* 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), at paragraph three of the syllabus.

{¶28} During the state's cross-examination of Chambers, the assistant prosecutor inquired:

> State: Now, let's talk more about your violence. Okay? Let's talk about your attempted felonious assault conviction. Do you remember that?
>
> Chambers: Felonious assault? Yeah. That was back in '99 I think.
>
> State: And you went to prison, right?
>
> Chambers: Yeah.
>
> State: And you were placed on parole afterwards, weren't you?
>
> Chambers: Uh-huh.
>
> State: Okay. So did you have a violent temper back then as well?
>
> Chambers: No. I was mad because my girlfriend was cheating on me.
>
> State: Okay. So you committed another felonious assault?
>
> Chambers: No. She was hollering where's her half of the wine, so I airmailed it to her and put some stitches in her head.
>
> State: So you threw the wine bottle at her?
>
> Chambers: Yes.
>
> State: Okay.

Chambers: I did three years over it.

State: Yeah.    Did you ever throw wine or glass bottles at Mr. Straka?

Chambers:    No.

**{¶29}** Chambers contends that the above-elicited testimony was inadmissible under Evid.R. 404(B).    The state argues that the testimony was admissible pursuant to Evid.R. 404(A)(1) and 609(D).    The state further argues that Chambers "opened the door" to the testimony.

Evid.R. 404(B)

**{¶30}** Chambers argues that his prior attempted felonious assault conviction was prohibited from coming into evidence by Evid.R. 404(B).    Generally, "evidence that an accused committed a crime other than the one for which he is on trial is not admissible when its sole purpose is to show the accused's propensity or inclination to commit crime or that he acted in conformity with bad character."    *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, ¶ 15, citing *State v. Curry*, 43 Ohio St.2d 66, 68, 330 N.E.2d 720 (1975).

**{¶31}** Evid.R. 404(B) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. In criminal cases, the proponent of evidence to be

offered under this rule shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

**{¶32}** In determining whether to permit other-acts evidence to be admitted, trial courts should conduct a three-step analysis set forth in *Williams*: (1) determine if the other-acts evidence "is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence" under Evid.R. 401; (2) determine if the other acts "is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other acts evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B)"; and (3) consider "whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice." *Id.* at ¶ 20.

**{¶33}** In this case, the state gave no advance notice of its intent to introduce other-acts evidence. And, on appeal, the state does not respond to Chambers's argument that Evid.R. 404(B) prohibited the testimony about his prior crime; instead the state focuses on Evid.R. 404(A)(1) and 609 as its avenue for admissibility.

**{¶34}** Notwithstanding these facts, Chambers's prior conviction was clearly not admissible pursuant to *Williams*. His 1999 conviction for attempted felonious assault was not relevant to his current case, there was no legitimate purpose to present the evidence other than to show that Chambers acted in conformity with his past behavior, and the unfair prejudice to Chambers outweighed any probative value.

Evid.R. 609

**{¶35}** Evid.R. 609 addresses impeachment of a witness by evidence of conviction of a crime, stating in relevant part:

> (A)(2) * * * [E]vidence that the accused has been convicted of a crime is admissible if the crime was punishable by death or imprisonment in excess of one year pursuant to the law under which the accused was convicted and if the court determines that the probative value of the evidence outweighs the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.

> (B) Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement, or the termination of probation, * * * or parole * * * unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect.

**{¶36}** Therefore, if a conviction such a felonious assault is more than ten years old, Evid.R. 609(B) requires a trial court to set forth "specific facts" on the record that reflect the facts and circumstances justifying the admission of the "stale" conviction. *State v. Triplett*, 8th Dist. Cuyahoga No. 97522, 2012-Ohio-3804, ¶ 38, citing *State v. Shepherd*, 8th Dist. Cuyahoga No. 81926, 2003-Ohio-3356, ¶ 23. Stale convictions, moreover, should be admitted only in rare circumstances. *Triplett* citing *id.*

**{¶37}** In this case, Chambers was convicted of attempted felonious assault in 1999. Although he was sentenced to three years in prison in his 1999 case and placed on parole after he was released from prison, there was no evidence presented in the current case that his release date from parole was less than ten years from the trial date in this case.

Therefore, the court cannot assume that his conviction falls within the ten-year time limit established by Evid.R. 609 and, consequently, his conviction dating from 1999 was inadmissible without a determination by the trial court that the probative value of this evidence outweighed its prejudicial effect. Because the trial court did not make such specific findings before permitting the state to introduce the evidence, the court clearly erred in allowing in this evidence. *See Triplett* at ¶ 40.

Evid.R. 404(A)(1)

{¶38} The state also contends that Chambers "opened the door" to the testing of his credibility by taking the stand and testifying on his own behalf. Although evidence about a person's character is generally inadmissible, "[e]vidence of a pertinent trait of character offered by an accused, or by the prosecution to rebut the same is admissible." Evid.R. 404(A)(1). In other words, a court will not find error "when the defense opens the door to otherwise inadmissible evidence." *State v. Davis*, 195 Ohio App.3d 123, 2011-Ohio-2387, 958 N.E.2d 1260, ¶ 26 (8th Dist.).

{¶39} Here, defense counsel did not ask any questions of Chambers, nor did Chambers offer any information, that would have opened the door to questioning about his prior convictions. During his direct examination, Chambers admitted to being an alcoholic and to drinking on the day in question. He denied having a romantic relationship with Straka. He asserted that on the evening of the assault he was trying to sleep when Straka started groping him and he punched Straka one or two times. Chambers never gave evidence of a "pertinent trait of character" that the prosecutor could attempt to rebut with questions about his prior conviction. Therefore, the testimony was

not admissible under Evid.R. 404(A)(1).

Harmless Error Analysis

{¶40} Even though we have determined that it was error for the trial court to allow in testimony about Chambers's 1999 conviction, error in the admission of evidence is harmless if there is no reasonable possibility that exclusion of the evidence would have affected the result of the trial. *State v. Boczar*, 11th Dist. Ashtabula No. 2007-A-0034, 2008-Ohio-834, ¶ 50, citing *State v. Webb*, 70 Ohio St.3d 325, 335, 638 N.E.2d 1023 (1994).

{¶41} In order to determine whether the admission of testimony on the prior convictions is prejudicial, an appellate court must review that evidence in light of the totality of other evidence properly introduced by the prosecution at trial. *Id.* The admission of the testimony regarding past convictions will be deemed harmless error if there is overwhelming evidence of guilt. *Id.*; *see also State v. Walker*, 8th Dist. Cuyahoga No. 94875, 2011-Ohio-1556, ¶ 38. A review of the entire record in this case demonstrates that the error was harmless.

{¶42} Chambers argues that the trial court improperly relied on his past conviction in finding him guilty of the felonious assault against Straka. To support this contention, Chambers cites to the following statement the trial court made in reading its verdict: "[Chambers] testified [about] a prior relationship when he found out that his girlfriend cheated on him, he airmailed a wine bottle to her, and that was the earlier incident in his lifetime. So apparently we have an issue of a little bit of intoxication and issues coming up during that."

{¶43} Although we are concerned that the trial court mentioned Chambers's 1999 conviction during the verdict, it could hardly have considered that Chambers was likely to have committed the instant offense based upon that conviction. More importantly, there was overwhelming evidence of Chambers's guilt, including his own admission that he was the one who punched Straka. Specifically, Chambers testified on cross-examination: "I never denied blacking his eye. I wasn't trying to break anything or anything like that. * * * I didn't do it on purpose. No, I didn't deny I hit him. * * * I didn't mean to break anything * * * that wasn't on purpose."

{¶44} In sum, although the trial court erred in allowing in evidence of Chambers's prior conviction, it was not reversible error given the overwhelming evidence of Chambers's guilt.

{¶45} The second assignment of error is overruled.

**Effective Assistance of Counsel**

{¶46} In the third and fourth assignments of error, Chambers argues that he was afforded ineffective assistance of counsel at trial.

{¶47} We review a claim of ineffective assistance of counsel under the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In order to prevail on an ineffective assistance of counsel claim, an appellant must demonstrate that his counsel's performance fell below an objective standard of reasonable representation; and if so, show there was a reasonable probability that his counsel's errors affected the outcome of the proceedings. *Id.*

{¶48} Chambers complains that trial counsel did not zealously represent him by

failing to cross-examine the police officers in the case with regard to whether they came upon Chambers asleep in his bed, as he claimed, or came upon him awake. This omission, according to Chambers, was central to his theory of the case and a material fact because it supports his argument that he assaulted Straka after Straka groped him. Chambers also complains that the trial court, in rendering its verdict, found that his testimony was not credible because his attorney did not thoroughly cross-examine the state's witnesses. Finally, Chambers argues that his attorney did not effectively represent him because counsel failed to object to testimony about his prior attempted felonious assault conviction.

{¶49} A review of the trial transcripts shows that Chambers received effective assistance of counsel. It is apparent from defense counsel's opening argument that Chambers's did not deny punching Straka; the theory of the case was that he was provoked by Straka's romantic advances and Straka's injuries did not rise to the level of serious physical harm. Thus, whether Chambers was asleep when the police arrived was not necessarily central to his theory of the case. In so far as Chambers complains about defense counsel's chosen method of cross-examination, we will not second-guess counsel's trial tactics.

{¶50} Finally, as we have found no reversible error in the admission of evidence of Chambers's prior conviction, we do not find Chambers was denied the effective assistance of trial counsel for counsel's failure to object to the admission of said evidence.

{¶51} Therefore, Chambers is unable to show that his trial counsel's representation fell below an acceptable standard of reasonable representation or that counsel's errors

affected the outcome of the trial.

**{¶52}** The third and fourth assignments of error are overruled.

**{¶53}** Accordingly, judgment is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

LARRY A. JONES, SR., PRESIDING JUDGE

EILEEN A. GALLAGHER, J., and
MELODY J. STEWART, J., CONCUR