[Cite as *State v. Cannon*, 2014-Ohio-4801.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 100658**

---

**STATE OF OHIO**

PLAINTIFF-APPELLEE

vs.

**DEMETRICE CANNON**

DEFENDANT-APPELLANT

---

**JUDGMENT:**
AFFIRMED IN PART, REVERSED IN PART,
AND REMANDED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-13-574884-A

**BEFORE:** E.A. Gallagher, J., Boyle, A.J., and Jones, J.

**RELEASED AND JOURNALIZED:** October 30, 2014

**ATTORNEY FOR APPELLANT**

Paul A. Mancino
Mancino Mancino & Mancino
75 Public Square Building
Suite 1016
Cleveland, Ohio 44113

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
BY:   Scott Zarzycki
          Frank Romeo Zeleznikar
Assistant County Prosecutors
Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio   44113

EILEEN A. GALLAGHER, J.:

{¶1} Defendant-appellant Demetrice Cannon appeals his convictions in the Cuyahoga County Court of Common Pleas. For the following reasons, we affirm in part, reverse in part and remand.

{¶2} On June 18, 2013, Cannon was indicted on charges of aggravated murder, murder, two counts of felonious assault, and having a weapon while under disability. Appellant plead not guilty to the charges, waived his right to a jury trial, and the case proceeded to a bench trial. For the purposes of R.C. 2923.13(A)(3), Cannon stipulated to prior felony drug trafficking convictions.

{¶3} The facts presented at trial were as follows: in the early hours of May 2, 2013, Kenyahta Steel died as a result of being shot four times with a .40 caliber firearm near the intersection of East 38th Street and Longwood Road in Cleveland, Ohio. Earlier that evening, Steel and Cannon had been shooting dice that deteriorated into a heated argument. As Steel was leaving the scene in an automobile, Cannon jogged to pursue the car and flagged Steel down. Cannon again argued with Steel for several minutes and, ultimately, Cannon shot Steel three to four times, which was testified to by two eyewitnesses: Demarco Parker and Brittany Baker-Terrell, as well as the appellant.

{¶4} After being Mirandized, when questioned by Cleveland police, Cannon initially claimed he was nowhere near the incident at the time of the shooting and did not even know Steel. After several witnesses at trial rebutted that assertion, Cannon claimed that he acted in self-defense, asserting that Steel shot at him first.

{¶5} This claim was overwhelmingly rebutted by other evidence. Two eyewitnesses testified to seeing Cannon shoot Steel but not to seeing Steel shooting at Cannon. Steel suffered

four gunshot wounds. Police found four identical .40 caliber shell casings near the scene of the crime. Steel did own a firearm, but several witnesses testified that Steel did not have a firearm on his person that evening.

{¶6} The only evidence, aside from Cannon's testimony, that Steel had fired a weapon at Cannon was gunshot residue found on Steel's left hand. While this residue is consistent with having fired a gun with his left hand, it is also consistent with being shot near his left arm at a range of one to four feet and/or Steel grabbing his wounded leg with his left hand after being shot at close range, which two eyewitnesses testified to having seen.

{¶7} The trial court returned a verdict finding Cannon guilty of the lesser included offense of murder with a three-year firearm specification and having a weapon while under disability. The trial court found Cannon not guilty of the remaining counts.[1] Cannon was sentenced to 15 years to life on the murder conviction, three years for the firearm specification and one year for having a weapon while under disability, for a total of 19 years to life. This appeal followed.

{¶8} Cannon's first assignment of error states:

Defendant was denied a fair trial when the prosecutor argues that the defendant was guilty because he failed to explain to the police his self-defense version.

{¶9} Cannon did not object to the testimony of Det. Raymond Diaz who testified that Cannon, when speaking with police after being arrested, did not present a self-defense explanation for his actions. The prosecution argued that Cannon's claim of self-defense lacked credibility due to his prior statements to police. Cannon's failure to object to the testimony of

---

[1]Although the trial court found Cannon not guilty of Counts 2, 3 and 4, the court's journal entry of October 25, 2013, and the sentencing entry issued on the same date contain a clerical error in that they state that those counts were nolled.

Diaz deprived the trial judge of any opportunity to rule on this issue. As a result, Cannon has waived all but plain error. *State v. Harris*, 8th Dist. Cuyahoga No. 99817, 2013-Ohio-5733, ¶ 13. An error constitutes plain error if it is obvious and affects a substantial right. *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, 767 N.E.2d 216, ¶ 108. Plain error exists only where it is clear that the verdict would have been otherwise but for the error. *State v. Skatzes*, 104 Ohio St.3d 195, 2004-Ohio-6391, 819 N.E.2d 215, ¶ 52. Notice of plain error is to be taken with utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. *State v. Phillips*, 74 Ohio St.3d 72, 83, 656 N.E.2d 643 (1995).

{¶10} Cannon asserts that the state's argument that Cannon did not present his self-defense claim to police amounts to impeaching the defendant by causing the trier of fact to draw an impermissible inference of guilt from his silence and therefore violated the rule of *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). We disagree.

{¶11} Once a criminal defendant receives the warnings required by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), it is improper for the state to impeach the defendant by causing the jury to draw an impermissible inference of guilt from the defendant's post-arrest silence. *Doyle* at 611. The rationale behind this rule is that *Miranda* warnings carry the state's "implicit assurance" that an arrestee's invocation of the Fifth Amendment right to remain silent will not later be used against him. *Wainwright v. Greenfield*, 474 U.S. 284, 290-291, 106 S.Ct. 634, 88 L.Ed.2d 623 (1986). Because a defendant's post-*Miranda* warning silence could be nothing more than an invocation of his right to silence, it would be fundamentally unfair to permit a breach of that assurance by allowing impeaching questions as to why the defendant failed to give an exculpatory account to the police after receiving the warnings. *Id*. at 295; *State v. Rogers*, 32 Ohio St.3d 70, 71, 512 N.E.2d 581 (1987).

**{¶12}** The rule in *Doyle* does not apply where "no governmental action induce[s] the defendant to remain silent" *Fletcher v. Weir*, 455 U.S. 603, 606, 102 S.Ct. 1309, 71 L.Ed.2d 490 (1982). So pre-arrest silence may be used for impeachment purposes because the state has done nothing to induce the defendant to believe that he has a right to remain silent before arrest. *Jenkins v. Anderson*, 447 U.S. 231, 240, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980); *State v. Leach*, 102 Ohio St.3d 135, 2004-Ohio-2147, 807 N.E.2d 335, ¶ 20-22. The same applies to post-arrest, pre-*Miranda* warning, silence, *Fletcher* at 605-607, and any voluntary post-*Miranda* warning statements. *Anderson v. Charles*, 447 U.S. 404, 408-409, 100 S.Ct. 2180, 65 L.Ed.2d 222 (1980).

The United States Supreme Court explained in *Anderson*:

> *Doyle* bars the use against a criminal defendant of silence maintained after receipt of governmental assurances. But *Doyle* does not apply to cross-examination that merely inquires into prior inconsistent statements. Such questioning makes no unfair use of silence, because a defendant who voluntarily speaks after receiving Miranda warnings has not been induced to remain silent. As to the subject matter of his statements, the defendant has not remained silent at all.

*Id*. at 408.

**{¶13}** In this instance, the impeachment arguments made by the state at trial complied with the holdings of *Jenkins* and *Anderson*. Pursuant to *Jenkins*, the state's comments about the disconnect between Cannon's pre-arrest silence and his alibi defense were permissible. Cannon's claim that the state violated *Doyle* is similarly without merit because Cannon did not exercise his right to remain silent; he waived it. He spoke openly with police, initially telling them that he did not shoot the victim, was not near the scene of the crime and did not know the victim. Cannon's prior statements, which were inconsistent with other evidence, were being used to impeach him; Cannon's silence was not. Cannon's first assignment of error is overruled.

**{¶14}** Cannon's second assignment of error states:

Defendant was denied a fair trial when the prosecutor cross-examined defendant concerning allged [sic] statements made by a witness who did not testify at trial.

{¶15} Under Evid.R. 611(B), "[c]ross-examination shall be permitted on all relevant matters and matters affecting credibility." "The limitation of * * * cross-examination lies within the sound discretion of the trial court, viewed in relation to the particular facts of the case. Such exercise of discretion will not be disturbed in the absence of a clear showing of an abuse of discretion." *State v. Acre*, 6 Ohio St.3d 140, 145, 451 N.E.2d 802 (1983). However, "[i]t is improper for an attorney, under the pretext of putting a question to a witness, to put before a jury information that is not supported by the evidence." *State v. Smidi*, 88 Ohio App.3d 177, 183, 623 N.E.2d 655 (6th Dist.1993).

{¶16} In this instance, the state cross-examined Cannon regarding statements that he purportedly made to Brandy Wyatt, a person who did not testify at trial, with respect to him not being present at the scene of the murder in contravention of his trial testimony. Cannon argues that this line of questioning denied him a fair trial. We disagree.

{¶17} Cannon's reliance on *Smidi* is misplaced. *Smidi* involved a jury trial wherein a prosecutor implied by his questions that he possessed evidence that would rebut the defendant's testimony and improperly introduced technical information to the jury.

{¶18} In this case, the prosecutor's questioning of Cannon was not analogous to *Smidi*. First, this was a bench trial, which carries with it the presumption that only "relevant, material, and competent evidence" is considered absent a showing to the contrary. *State v. Vason*, 8th Dist. Cuyahoga No. 88069, 2007-Ohio-1599, ¶ 19, citing *State v. Baston*, 85 Ohio St.3d 418, 421, 709 N.E.2d 128 (1999). The prosecutor's questions, which concerned prior inconsistent statements made by Cannon, spoke directly to Cannon's credibility. Furthermore, this testimony was merely cumulative in light of the state's introduction of Cannon's contradictory

statements to police and was, at most, harmless error. *State v. Chambers*, 8th Dist. Cuyahoga No. 99864, 2014-Ohio-390, ¶ 40 (error in the admission of evidence is harmless if there is no reasonable possibility that exclusion of the evidence would have affected the result of the trial). Cannon's second assignment of error is overruled.

{¶19} Cannon's third assignment of error states:

Defendant was denied effective assistance of counsel guaranteed by the Sixth Amendment.

{¶20} Cannon argues that because his attorney failed to file a motion to suppress, object to hearsay testimony and/or object to prosecutorial misconduct, he was denied effective assistance of counsel.

{¶21} In order to prevail on a claim of ineffective assistance of counsel, the appellant must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). Counsel's performance may be found to be deficient if counsel "made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Strickland* at 687. To establish prejudice, "the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *Bradley* at 143.

{¶22} In determining whether counsel's performance fell below an objective standard of reasonableness, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland* at 689. Because of the difficulties inherent in determining whether counsel rendered effective assistance in any given case, a strong presumption exists that counsel's conduct fell within the wide range of reasonable, professional assistance. *Id*.

**{¶23}** First, Cannon argues that by failing to file a motion to suppress, he was denied effective assistance of counsel. We disagree.

**{¶24}** "Failing to file a motion to suppress does not constitute ineffective assistance of counsel per se. To establish ineffective assistance of counsel for failure to file a motion to suppress, a defendant must prove that there was a basis to suppress the evidence in question." *State v. Brown*, 115 Ohio St.3d 55, 2007-Ohio-4837, 873 N.E.2d 858, ¶ 65.

**{¶25}** In this instance, Cannon argues that his attorney instructed Det. Diaz that no statement should be taken from Cannon upon his arrest. However, the record does not support this contention. To the contrary, the record reflects that Det. Diaz testified to advising Cannon of his constitutional rights in a video-recorded interview room prior to questioning him. We cannot say that the trial counsel's performance was deficient because there is no credible evidence to support the notion that a motion to suppress would have been successful.

**{¶26}** Cannon next argues that his attorney provided ineffective assistance of counsel by failing to object to hearsay testimony offered by Det. Diaz regarding whether Steel was right- or left-handed. The state does not dispute that the relevant testimony was hearsay but argues that Cannon cannot demonstrate a reasonable probability that, but for the failure to object to this testimony, the result of the trial would have been different. We agree.

**{¶27}** Cannon argues that Det. Diaz's testimony that Cannon was right- handed improperly undermined his self-defense claim that Steel fired a gun at him prior to his own shots because gunshot residue was discovered on Steel's *left* hand.

**{¶28}** We are unpersuaded by Cannon's argument. The record was rife with evidence suggesting that the gunshot residue on Steel's left hand was not from firing a firearm, but from being shot by Cannon. There was no trace metal found on either of Steel's hands that would

indicate he held a firearm. The gunshot residue was consistent with being shot at a range of one to four feet or by Steel grabbing his left leg after being shot there at close range. The eyewitnesses testified to seeing Cannon shoot Steel, but not to Steel shooting at Cannon. Therefore, we hold the failure to object to the hearsay statements was harmless in that there was no reasonable probability that, but for the error, the result of the trial would have been different.

{¶29} Finally, Cannon repackages his argument from his first assignment of error, asserting that the prosecution's statements concerning the failure of Cannon to present a self-defense version of events to police amounted to prosecutorial misconduct, and the failure of defense counsel to object to that misconduct amounts to ineffective assistance of counsel. We disagree.

{¶30} The test for prosecutorial misconduct is whether the prosecutor's remarks or questions were improper, and if so, whether they prejudicially affected substantial rights of the accused. *State v. Hicks*, 194 Ohio App.3d 743, 2011-Ohio-3578, 957 N.E.2d 866, ¶ 30 (8th Dist.). A prosecutor's conduct during trial cannot be grounds for error unless the conduct deprives the defendant of a fair trial. *State v. Apanovitch*, 33 Ohio St.3d 19, 24, 514 N.E.2d 394 (1987). The focus of that inquiry is on the fairness of the trial, not on the culpability of the prosecutor. *State v. Bey*, 85 Ohio St.3d 487, 496, 709 N.E.2d 484 (1999). "[G]iven the myriad safeguards provided to assure a fair trial, and taking into account the reality of the human fallibility of the participants, *there can be no such thing as an error-free, perfect trial*, and * * * the Constitution does not guarantee such a trial." *United States v. Hasting*, 461 U.S. 499, 508-509, 103 S.Ct. 1974 76 L.Ed.2d 96 (1983). (Emphasis added.)

{¶31} Our focus upon review is whether the prosecutor's comments violated appellant's substantial rights, thereby depriving appellant of a fair trial such that there is a reasonable

probability that, but for the prosecutor's misconduct, the result of the proceeding would have been different. *Hicks* at ¶30; *State v. Onunwor*, 8th Dist. Cuyahoga No. 93937, 2010-Ohio-5587, ¶ 42, citing *State v. Loza*, 71 Ohio St.3d 61, 641 N.E.2d 1082 (1994).

> We note, however, that a defendant's substantial rights cannot be prejudiced when the remaining evidence, standing alone, is so overwhelming that it constitutes defendant's guilt and the outcome of the case would have been the same regardless of evidence admitted erroneously. *Hicks* at 30, citing *State v. Williams*, 38 Ohio St.3d 346, 528 N.E.2d 910 (1988).

**{¶32}** Pursuant to our analysis in this first assignment of error, we cannot say that there was prosecutorial misconduct nor that the failure to object to it was error by trial counsel, let alone a harmful one. Cannon's third assignment of error is overruled.

**{¶33}** Cannon's fourth assignment of error states:

> Defendant was denied due process of law when the court overruled his motions for judgment of acquittal.

**{¶34}** "[T]he test an appellate court must apply when reviewing a challenge based on a denial of a motion for acquittal is the same challenge based on the sufficiency of the evidence to support a conviction." *State v. Thompson*, 127 Ohio App.3d 511, 525, 713 N.E.2d 456 (8th Dist.1998). This court has said, in evaluating a sufficiency of evidence argument:

> [c]ourts are to assess not whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. The weight and credibility of the evidence are left to the trier of fact.

*State v. Jackson*, 8th Dist. Cuyahoga No. 86542, 2006-Ohio-1938, ¶ 23.

**{¶35}** Cannon was convicted of murder in violation of R.C. 2903.02 with a three-year firearm specification pursuant to R.C. 2941.145(A) and having a weapon while under disability in violation of R.C. 2923.13(A)(3). R.C. 2903.02(A) prohibits purposely causing the death of

another. R.C. 2923.13(A)(3) prohibits firearm possession by anyone with a current indictment or prior conviction of a felony drug offense. R.C. 2941.145 imposes an additional three-year prison term when "the offender had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense."

{¶36} Cannon fails to present a specific sufficiency argument and instead attacks the credibility of the eyewitnesses to the shooting. Cannon's argument is without merit. Two eyewitnesses, Demarco Parker and Brittany Baker-Terrell, testified that they witnessed Cannon shoot Steel. Cannon himself testified to shooting Steel. Three witnesses and Cannon himself testified to an argument over a dice game between Cannon and Steel taking place prior to the shooting. Other witnesses who were in the area testified that they heard three or four gun shots during the time of the incident. Investigators found four shell casings at the scene of the crime, all the same type and caliber, indicating that they all came from the same firearm. Dr. Armstrong, a pathologist from the Cuyahoga County medical examiner's office, testified that Steel died as a result of four gunshot wounds. Four .40 caliber Smith & Wesson shell casings were recovered from the scene. Gunshot residue on Steel's body was consistent with being shot from a distance of one to four feet, which was also consistent with the testimony of Demarco Parker.

{¶37} In regard to Cannon's conviction for having a weapon while under disability, Cannon stipulated to a prior felony drug trafficking offense, demonstrating disability under R.C. 2913.13(A)(3), and Cannon himself admitted to possessing and using a firearm to shoot Steel.

{¶38} Cannon's fourth assignment of error is overruled.

{¶39} Cannon's fifth assignment of error states:

Defendant is entitled to a new trial as the judgment and verdict are against the manifest weight of the evidence.

{¶40} A manifest weight challenge questions whether the prosecution met its burden of persuasion. *State v. Byrd*, 8th Dist. Cuyahoga No. 98037, 2012-Ohio-5728, ¶ 27. When considering a manifest weight challenge, a reviewing court reviews the entire record, weighs the evidence and all reasonable inferences therefrom, considers the credibility of the witnesses and determines whether the finder of fact clearly lost its way. *State v. Jackson*, 8th Dist. Cuyahoga No. 86542, 2006-Ohio-1938, ¶ 29. A reviewing court may reverse the judgment of conviction if it appears that the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Id*.

{¶41} Cannon argues that the eyewitness testimony in this case was weak due to the fact that Brittany Baker-Terrell wavered on the stand regarding whether she personally viewed the shooting or had heard about it from others. Cannon points out that the only other eyewitness, Demarco Parker, was a friend of the victim. However, aside from these perceived weaknesses in the state's case, there was overwhelming evidence to support the trial court's verdict. Cannon himself admitted to shooting Steel. His self-defense argument was contradicted by evidence recovered from the scene, his own inconsistent statement to police and eyewitness testimony that refuted Cannon's claim that Steel fired a gun at him. In light of the evidence presented at trial and analyzed in the fourth assignment of error, we cannot say that the finder of fact clearly lost its way in finding appellant guilty of the above offenses.

{¶42} Cannon's fifth assignment of error is overruled.

{¶43} Cannon's sixth assignment of error states:

Defendant was denied due process of law when defendant received a consecutive sentence based on judicial fact-finding.

**{¶44}** When reviewing a felony sentence, we follow the standard of review set forth in R.C. 2953.08(G)(2), which provides in relevant part:

> The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court. The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:
>
> (a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;
>
> (b) That the sentence is otherwise contrary to law.

*Id*.

**{¶45}** A sentence is not clearly and convincingly contrary to law where the trial court considers the purposes and principles of sentencing under R.C. 2929.11 as well as the seriousness and recidivism factors listed in R.C. 2929.12, properly applies postrelease control and sentences a defendant within the permissible statutory range. *State v. A.H.*, 8th Dist. Cuyahoga No. 98622, 2013-Ohio-2525, ¶ 10, citing *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124.

**{¶46}** R.C. 2929.14(C)(4) authorizes the court to require an offender to serve multiple prison terms consecutively for convictions on multiple offenses. Consecutive sentences can be imposed if the court finds that (1) a consecutive sentence is necessary to protect the public from future crime or to punish the offender and (2) that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public. In addition to these two factors, the court must find any of the following:

(a) The offender committed one or more of the multiple offenses while the

offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

*Id.*

**{¶47}** In this instance, the trial court stated in its sentencing journal entry that it considered all required factors of law and there is no dispute that the individual sentences are within the applicable statutory ranges. Further, during sentencing, the trial court found that consecutive sentences were necessary to protect the public from future crime, that consecutive sentences were not disproportionate to the seriousness of the offenses and that Cannon's prior criminal history demonstrated a disregard for social norms. The trial court made the required findings to support consecutive sentences and the record supports the court's findings.

**{¶48}** Cannon appears to argue that the court improperly engaged in judicial fact-finding regarding his consecutive sentences in violation of the Sixth Amendment. The Ohio Supreme Court rejected this argument in *State v. Hodge*, 128 Ohio St.3d 1, 2010-Ohio-6320, 941 N.E.2d 768. In *Hodge*, the court explained that "[a]fter [*Oregon v. Ice*, 555 U.S. 160, 129 S.Ct. 711, 172 L.Ed.2d 517 (2009)], it is now settled law * * * that the jury-trial guarantee of the Sixth Amendment to the United States Constitution does not preclude states from requiring trial court judges to engage in judicial fact-finding prior to imposing consecutive sentences." *Id*. at ¶ 19.

**{¶49}** Sua sponte, we note that the Ohio Supreme Court recently held that a trial court must incorporate its consecutive sentence findings into its sentencing entry. *State v. Bonnell*,

140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 29.

"A trial court's inadvertent failure to incorporate the statutory findings in the sentencing entry after properly making those findings at the sentencing hearing does not render the sentence contrary to law; rather, such a clerical mistake may be corrected by the court through a nunc pro tunc entry to reflect what actually occurred in open court." *Id*. at ¶ 30.

**{¶50}** Consequently, Cannon's sixth assignment of error is overruled in part and sustained in part.

**{¶51}** Cannon's seventh assignment of error states:

Defendant was subjected to unconstitutional multiple punishments when the court failed to merge the firearm specifications with the offense of having a weapon while under a [sic] disability.

**{¶52}** In his final assignment of error Cannon argues that the trial court erred in failing to merge his convictions for murder with a firearm specification and having a weapon while under disability.

**{¶53}** Our review of an allied offenses question is de novo. *State v. Webb*, 8th Dist. Cuyahoga No. 98628, 2013-Ohio-699, ¶ 4, citing *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245, ¶ 28.

**{¶54}** Under Ohio law, "[w]here the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one." R.C. 2941.25(A). However,

[w]here the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

R.C. 2941.25(B).

{¶55} In *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, the Ohio Supreme Court redefined the test for determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25. The *Johnson* court expressly overruled *State v. Rance*, 85 Ohio St.3d 632, 710 N.E.2d 699 (1999), which required a "comparison of the statutory elements in the abstract" to determine whether the statutory elements of the crimes correspond to such a degree that the commission of one crime will result in the commission of the other. Pursuant to *Johnson*, the conduct of the accused must be considered in determining whether two offenses should be merged as allied offenses of similar import under R.C. 2941.25. *Id*. at syllabus. The determinative inquiry is two-fold: (1) "whether it is possible to commit one offense and commit the other with the same conduct," and (2) "whether the offenses were committed by the same conduct, i.e., a single act, committed with a single state of mind." *Id*. at ¶ 48-49, quoting *State v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, 895 N.E.2d 149, ¶ 50 (Lanzinger, J., dissenting). "If the answer to both questions is yes, then the offenses are allied offenses of similar import and will be merged." *Id*. at ¶ 50.

{¶56} Conversely, if the court determines that the commission of one offense will never result in the commission of the other, or if the offenses are committed separately, or if the defendant has separate animus for each offense, then, according to R.C. 2941.25(B), the offenses will not merge. *Id*. at ¶ 51.

{¶57} The term "animus," as defined by the Ohio Supreme Court in *State v. Logan*, 60 Ohio St.2d 126, 131, 397 N.E.2d 1345 (1979), means "purpose or, more properly, immediate motive."

{¶58} First, Cannon contends that having a weapon while under disability is an allied offense of similar import to a firearm specification. This exact argument has been previously

considered and rejected by this court. *See State v. Shepherd*, 8th Dist. Cuyahoga No. 99503, 2013-Ohio-4912, ¶ 8; *State v. Majid*, 8th Dist. Cuyahoga No. 96855, 2012-Ohio-1192, ¶ 94; *State v. Williams*, 8th Dist. Cuyahoga No. 81949, 2003-Ohio-3950, ¶ 19-21; *State v. Whittsette*, 8th Dist. Cuyahoga No. 70091, 1997 Ohio App. LEXIS 500, *6 (Feb. 13, 1997), citing *State v. Blankenship*, 102 Ohio App.3d 534, 547, 657 N.E.2d 559 (12th Dist.1995).

**{¶59}** Cannon also argues that his conviction for murder should have merged with his having a weapon while under disability charge. We disagree. Cannon testified that he was in possession of his firearm well before he used it to shoot Steel. This court has previously rejected merger of murder and having a weapon while under disability offenses under similar circumstances due to the separate animuses involved. *State v. Hodges*, 8th Dist. Cuyahoga No. 99511, 2013-Ohio-5025, ¶ 20; *see also State v. Conner*, 8th Dist. Cuyahoga No. 99557, 2014-Ohio-601, ¶ 126 (holding that the animus for possessing a weapon while under disability is different from the animus for felonious assault and the discharge of a firearm because the animus of having a weapon while under disability is making a conscious choice to possess a weapon and the fact that a defendant then uses the weapon to commit other crimes does not absolve the criminal liability that arises solely from his decision to illegally possess the weapon).

**{¶60}** Therefore, because these offenses each involved a separate animus, the offenses do not merge.

**{¶61}** Cannon's seventh assignment of error is overruled.

**{¶62}** The judgment of the trial court is affirmed in part and reversed in part, and remanded for the trial court to issue nunc pro tunc entries to correct the clerical errors in the journal entry dated October 25, 2013, and the sentencing entry and to bring the sentencing entry into compliance with the requirements of *Bonnell* by incorporating its consecutive-sentencing

findings into its sentence entry.

It is ordered that appellee and appellant share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.   The defendant's conviction having been affirmed, any bail pending appeal is terminated.   Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

EILEEN A. GALLAGHER, JUDGE

MARY J. BOYLE, A.J., and
LARRY A. JONES, SR.,   J., CONCUR