JOURNAL ENTRY AND OPINION
{¶ 1} Appellant, Rodney Lawson, appeals his convictions and sentences for rape, kidnapping, and aggravated robbery. After a thorough review of the record, and for the reasons set forth below, we affirm.
 {¶ 2} On February 27, 2006, a grand jury indicted appellant on six counts. Counts One, Two, and Three charged rape under R.C. 2907.02(A)(2); Count Four charged kidnapping under R.C. 2905.01(A)(2)-(4); Count Five charged aggravated robbery under R.C. 2911.01(A)(1); and Count Six charged having a weapon while under disability under R.C. 2923.13.
 {¶ 3} On August 13, 2007, a bench trial began. The trial court found appellant guilty of the first five counts, but found him not guilty of Count Six and all firearm specifications. The judge also found appellant guilty of the notices of prior conviction, repeat violent offender specifications, and sexually violent predator specifications regarding Counts One through Five.
 {¶ 4} At the sentencing hearing, the trial judge sentenced appellant to ten years in prison on each of the first five counts. The court ordered that the ten-year sentences on Counts One, Two, and Three be served consecutively to each other for a total of 30 years. The trial court ordered that the ten-year sentences on Counts Four and Five be served concurrently to each other and concurrently to the first three counts. *Page 4 
 {¶ 5} The facts that gave rise to this appeal began on January 15, 2006 at 3:00 a.m., when seventeen-year-old C.T.[1] ("the victim") decided to visit a friend. According to the testimony of the victim, she took a bus to the Windermere Rapid Transit Station ("the rapid station") in East Cleveland, arriving at the rapid station at 3:30 or 3:40 a.m. As the victim waited for the rapid to arrive, appellant approached her asking for a cigarette. The victim gave him a cigarette, and he walked away.
 {¶ 6} A few minutes later, the victim decided to purchase a beverage from a vending machine inside the rapid station. Appellant approached her and informed her that there was a vending machine on the lower level where you could purchase drinks at a lower cost. The victim decided to go with appellant down the escalator to find the vending machine. Ultimately, she discovered that no vending machine existed and realized that she had been lured outside by a stranger.
 {¶ 7} The victim told appellant she wanted to get back to the rapid station because she did not want to miss her bus; however, appellant grabbed her from behind, dragged her back outside, and thrust her against a wall. Appellant ordered the victim to give him all her money. The victim testified that she was scared, but gave appellant all her money as he pressed a hard object into her neck.
 {¶ 8} After obtaining the victim's money, appellant grabbed her coat and took her out to the street. Appellant then took the victim behind a convenience store and ordered her to *Page 5 
perform oral sex on him. The victim begged him to stop, but he would not. A few minutes later, appellant inserted his penis into the victim's vagina. Thereafter, he ordered her to perform oral sex again, and then inserted his penis into her anus. Finally, appellant engaged in vaginal intercourse with the victim again.
 {¶ 9} Ultimately, the victim was able to run away from appellant and get onto a bus, where she told the driver, Jerry Edwards, that she had been robbed and needed help. According to the victim, she did not tell him about the rape because she was embarrassed. The bus driver took the victim to RTA Police Officer Rhonda Briskey. Officer Briskey testified that the victim gave her a full report of the incident. An ambulance took the victim to Huron Road Hospital, where a sexual assault examination took place. At the East Cleveland Police Department, the victim was unable to identify appellant in the photo books; however, in February 2006, she identified appellant in a photo array.
 {¶ 10} RTA Police Officer Orlando Hudson testified that the victim gave him a description of the attacker, but he was unable to locate the suspect. Officer Hudson went to the convenience store and saw the victim's purse and personal items strewn about and found two sets of footprints. One set of prints led to the rapid station, while the other led to a field.
 {¶ 11} Huron Road Hospital's Dr. Janice Eitel testified that she examined the victim, who reported pain in her vaginal area. From the medical records, the doctor testified about what the victim told her about the incident. The description in the medical records was consistent with the victim's in-court testimony. According to the Ohio Bureau of Criminal *Page 6 
Investigation and Identification's laboratory technician, Chris Smith, appellant could not be excluded as the source of the semen and DNA found in the victim's vagina and anus.
 {¶ 12} RTA Police Department's Sergeant Scott Medlong testified about surveillance camera footage showing that appellant forcefully removed the victim from the rapid station. The video also showed the victim returning to the station after 27 minutes.
 {¶ 13} The East Cleveland Police Department's Detective Tiffany Cleveland testified about appellant's tape-recorded oral statement. According to Det. Cleveland, appellant stated that he was on a bus when he saw the victim notice a $100 bill he was holding in his hand. The victim sat down next to appellant and they conversed. According to appellant, the victim stared in the direction of his penis and asked what she could do to get appellant's $100. They got off the bus at Windermere Station and the victim again asked what she could do for the $100. Appellant told her she could have the money in exchange for sex.
 {¶ 14} Appellant stated that they went behind the convenience store and engaged in consensual oral and vaginal sex. After they had sex, appellant gave the victim the $100 bill; however, the victim became enraged after she discovered it was fake currency. Appellant stated he went home and thought nothing more about the situation. Appellant did not present a defense at trial.
 Review and Analysis {¶ 15} Appellant brings this appeal, asserting five assignments of error for our review. Because appellant's first and second assignments of error are substantially interrelated, they are addressed together. *Page 7 
 Sufficiency and Manifest Weight of the Evidence {¶ 16} "I. The trial court erred in denying appellant's motion for acquittal as to the charges when the state failed to present sufficient evidence against appellant."
 {¶ 17} "II. Appellant's convictions are against the manifest weight of the evidence."
 {¶ 18} Appellant argues that his convictions are not supported by sufficient evidence and are against the manifest weight of the evidence. More specifically, he alleges there is no evidence of "force." This argument is without merit.
 {¶ 19} Whether the evidence is legally sufficient to sustain a verdict is a question of law. State v. Robinson (1955), 162 Ohio St. 486,124 N.E.2d 148. A conviction based on legally insufficient evidence constitutes a denial of due process. Tibbs v. Florida (1982),457 U.S. 31, 102 S.Ct.2211, 72 L.Ed.2d 652, citing Jackson v. Virginia (1979),443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.
 {¶ 20} Where there is substantial evidence upon which the trier of fact has based its verdict, a reviewing court abuses its discretion in substituting its judgment for that of the trier of fact as to the weight and sufficiency of the evidence. State v. Nicely (1988),39 Ohio St.3d 147, 529 N.E.2d 1236. The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact to determine. State v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212. On review, the appellate court must determine, after viewing the evidence in a light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492; Jackson v. Virginia, supra. *Page 8 
 {¶ 21} Sufficiency of the evidence is subjected to a different standard than is manifest weight of the evidence. Article IV, Section 3(B)(3) of the Ohio Constitution authorizes appellate courts to assess the weight of the evidence independently of the fact-finder. Thus, when a claim is assigned concerning the manifest weight of the evidence, an appellate court "has the authority and duty to weigh the evidence and to determine whether the findings of * * * the trier of fact were so against the weight of the evidence as to require a reversal and a remanding of the case for retrial." State ex rel. Squire v. Cleveland (1948),150 Ohio St. 303, 345, 82 N.E.2d 709.
 {¶ 22} The United States Supreme Court recognized the distinctions in considering a claim based upon the manifest weight of the evidence as opposed to sufficiency of that evidence. The court held in Tibbs v.Florida, supra, that, unlike a reversal based upon the insufficiency of the evidence, an appellate court's disagreement with the jurors' weighing of the evidence does not require special deference accorded verdicts of acquittal, i.e., invocation of the double jeopardy clause as a bar to relitigation. Id. at 43. Upon application of the standards enunciated in Tibbs, the court in State v. Martin (1983),20 Ohio App.3d 172, 485 N.E.2d 717, has set forth the proper test to be utilized when addressing the issue of manifest weight of the evidence. The Martin
court stated:
 {¶ 23} "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest *Page 9 
miscarriage of justice that the conviction must be reversed and a new trial ordered." Martin at 720.
 {¶ 24} Initially, we note that appellant seems to allege that the victim's testimony alone is insufficient to convict him of rape. However, in State v. Sklenar (1991), 71 Ohio App.3d 444, 447,594 N.E.2d 88, the court held that there is no requirement that victim testimony in rape cases be corroborated. Further, as will be discussed below, the state provided additional evidence other than the victim's testimony.
 {¶ 25} We now turn to appellant's main argument that the sexual activity was consensual and there was no evidence to indicate that force was use. Under R.C. 2907.02(A)(2), "no person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."
 {¶ 26} We find that there was sufficient evidence of "force" or "threat of force," as required under R.C. 2907.02(A)(2). In addition to the victim's testimony, the evidence included medical records, DNA evidence, and video surveillance images showing appellant's forceful removal of the victim from the rapid station. The video evidence provides sufficient evidence of "force." The victim's testimony that appellant jabbed a "hard object" into her neck and ordered her to perform sexual acts with him is evidence of "threat of force." The victim testified that she complied with his orders because she feared for her life, which evidences "threat of force." Therefore, we find that the state, while only needing to prove "force" or "threat of force," provided sufficient evidence of both. *Page 10 
 {¶ 27} Next, we specifically address appellant's argument that the victim is seen smiling in State's Exhibit No. 12, and smoking a cigarette in State's Exhibit No. 13. First, it is not clear from the photograph that the victim is smiling. Further, the images from the video camera were taken at 4:03 a.m., before the alleged rapes occurred. This time was presumably after the victim discovered no vending machine existed and was attempting to return to catch her bus. Thereafter, at 4:04 a.m., State's Exhibit No. 16 shows appellant grabbing the victim from behind to take her outside where the rapes occurred. Thereafter, State's Exhibit No. 18 and 19 show the victim returning to the rapid station at 4:31 a.m., after the alleged rapes. In those images, the victim appears upset.
 {¶ 28} In his brief, appellant alleges that he feels the trial judge may have considered some inadmissible evidence. Appellant refers to the fact that the trial judge knew about his previous criminal record, that appellant had disagreements with his lawyer, and that appellant had considered a plea deal. However, in bench trials, the trier-of-fact is presumed to only consider relevant and competent evidence. State v.Vason, Cuyahoga App. No. 88069, 2007-Ohio-1599, at ¶ 19. Therefore, we find appellant's argument unpersuasive.
 {¶ 29} Finally, appellant argues that the rape convictions are against the manifest weight of the evidence. We find this argument unpersuasive. Because of the amount of evidence in support of appellant's convictions (as outlined above), we cannot say that the fact finder clearly lost his way. Therefore, we find that appellant's convictions are not against the manifest weight of the evidence. Accordingly, appellant's first and second assignments of error are without merit. *Page 11 
 Allied Offenses {¶ 30} "III. The trial court erred by imposing a sentence for rape and kidnapping because the offenses are allied offenses pursuant to R.C. 2941.15 and they are part of the same transaction under R.C. 2929.14."
 {¶ 31} Appellant argues that the trial court erred when it failed to merge his rape and kidnapping offenses. This argument is without merit.
 {¶ 32} In State v. Rance, 85 Ohio St.3d 632, 1999-Ohio-291,710 N.E.2d 699, the Ohio Supreme Court reconsidered the issue of how to apply R.C. 2941.25(A) when determining whether two or more offenses constitute allied offenses of similar import. Prior to Rance, the test used by the courts was that set forth in Newark v. Vazirani (1990),48 Ohio St.3d 81, 549 N.E.2d 520, syllabus, overruled, Rance, supra.
 {¶ 33} Under R.C. 2941.25, a two-tiered test must be undertaken to determine whether two or more crimes are allied offenses of similar import. In the first step, the elements of the two crimes are compared. If the elements of the offenses correspond to such a degree that the commission of one crime will result in the commission of the other, the crimes are allied offenses of similar import, and the court must then proceed to the second step. In the second step, the defendant's conduct is reviewed to determine whether the defendant can be convicted of both offenses. If the court finds either that the crimes were committed separately or that there was a separate animus for each crime, the defendant may be convicted of both offenses. *Page 12 
 {¶ 34} In Vazirani, the court compared the elements of the two crimes charged by reference to the particular facts alleged in the indictment. Id. at 83. Later cases compared the elements of the charged offenses in the abstract, without reference to facts alleged in the indictment.State v. Richey, 64 Ohio St.3d 353, 369, 1992-Ohio-44, 595 N.E.2d 915, rehearing denied, 65 Ohio St. 3d 1421, 598 N.E.2d 1172, certiorari denied (1993), 507 U.S. 989, 113 S.Ct. 1592, 123 L.Ed. 2d 157, rehearing denied (1993), 508 U.S. 934, 113 S.Ct. 2401, 124 L.Ed. 2d 303.
 {¶ 35} In Ranee, the Ohio Supreme Court reconsidered whether the elements test should be conducted in terms of the facts of the specific case or in terms of the statutory elements of the offenses in the abstract. The court ruled that an analysis of the elements in the abstract was proper, overruling Vazirani and language to the contrary in other cases. Ranee, supra, paragraph one of the syllabus.
 {¶ 36} Under Ranee, when determining whether two or more offenses are allied offenses of similar import, the court should assess, by aligning the elements of each crime in the abstract, whether the statutory elements of the crimes "correspond to such a degree that the commission of one crime will result in the commission of the other. (Citation omitted.) And if the elements do so correspond, the defendant may not be convicted of both unless the court finds that the defendant committed the crimes separately or with separate animus. R.C. 2941.25(B)." Id. at 638-639.
 {¶ 37} Here, appellant alleges that kidnapping and rape are allied offenses. We find that the offenses are not allied offenses because each offense was committed with separate *Page 13 
animus. In State v. Rodrigues, Cuyahoga App. No. 80610, 2003-Ohio-1334, this court held that "kidnapping may be said to be implicit in any forcible rape." Id. at ¶ 27, citing State v. Mitchell (1983),6 Ohio St.3d 416, 418, 453 N.E.2d 593. "The Ohio Supreme Court has held that kidnapping, in violation of R.C. 2905.01(A)(4), and rape, in violation of R.C. 2907.02(A)(2), can constitute allied offenses of similar import." Id., citing State v. Donald (1979), 57 Ohio St.2d 73,386 N.E.2d 1341. Therefore, a defendant cannot be convicted for both offenses unless they were committed separately or with separate animus. Id.
 {¶ 38} In determining whether kidnapping and an offense of the same or similar import are committed with separate animus, the Ohio Supreme Court has held that where the restraint of the victim is merely incidental to a separate underlying crime, there is no separate animus sufficient for separate convictions. Id. at ¶ 27-28, citing State v.Logan (1979), 60 Ohio St.2d 126, 397 N.E.2d 1345. However, where the restraint is prolonged, secretive, or the movement is substantial, there is a separate animus as to each offense. Id.
 {¶ 39} Here, appellant lured the victim outside the rapid station and robbed her. Then, he kidnapped her by forcefully walking her through a parking lot, across a street, and behind a store. After he arrived at the store, he raped the victim. We find that the duration and distance from the rapid station to the store is evidence that appellant committed the offenses of rape and kidnapping with separate animus. Therefore, the crimes are not allied offenses. Accordingly, appellant's third assignment of error is overruled.
 Sentences *Page 14 {¶ 40} Because appellant's fourth and fifth assignments of error are substantially interrelated, they are addressed together.
 {¶ 41} "IV. The trial court erred by ordering appellant to serve a consecutive sentence."
 {¶ 42} "V. The trial court erred when it sentenced appellant to a maximum sentence."
 {¶ 43} Appellant argues that the trial court erred when it failed to make findings when it sentenced him to maximum sentences to be served consecutively. He also argues that the application of State v.Foster, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, violates the ex post facto clause. These arguments are without merit.
 {¶ 44} In Foster, the Court found several sections of the revised code unconstitutional, including R.C. 2929.14(B), and severed the offending portions from the statutes. As a result, trial courts now have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or state reasons for imposing more than the minimum sentences. Foster, supra.[2]
 {¶ 45} Appellant also argues that Foster does not apply to defendants whose alleged criminal conduct pre-dates Foster because it would be a violation of the ex post facto clause. If Foster did not apply to appellant, he would enjoy a presumption of minimum concurrent sentencing. The Ex Post Facto Clause of Article 1, Section 10, of the *Page 15 
United States Constitution prohibits any legislation that "changes the punishment, and inflicts greater punishment, than the law annexed to the crime, when committed." Miller v. Florida (1987), 482 U.S. 423, 429, 107 S.Ct. 2446,96 L.Ed.2d 351, quoting Calder v. Bull (1798), 3 U.S. 386, 1 L.Ed.648.
 {¶ 46} This court has addressed this issue and, after a thorough analysis of state and federal law, found as follows: "In the instant case, [defendant] had notice that the sentencing range was the same at the time he committed the offenses as when he was sentenced.Foster did not judicially increase the range of his sentence, nor did it retroactively apply a new statutory maximum to an earlier committed crime, nor did it create the possibility of consecutive sentences where none existed. As a result, we conclude that the remedial holding ofFoster does not violate [defendant's] due process rights or the ex post facto principles contained therein." State v. Mallette, Cuyahoga App. No. 87984, 2007-Ohio-715, discretionary appeal not allowed,115 Ohio St.3d 1439, 2007-Ohio-5567, 875 N.E.2d 101.
 {¶ 47} In the instant case, appellant had notice regarding the sentencing range, which was the same at the time of the offenses as when he was sentenced. Because we find that the holding of Mallette, supra, directly applies to the instant matter, we adopt the Mallette court's holding. We therefore find that the remedial holding of Foster does not violate appellant's due process rights or the ex post facto principles contained therein. Accordingly, appellant's fourth and fifth assignments of error are overruled.
Judgment affirmed.
 It is ordered that appellee recover from appellant costs herein taxed. *Page 16 
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANTHONY O. CALABRESE, JR., P.J., and MARY EILEEN KILBANE, J., CONCUR KEY WORDS: #90589 — S/O v. Rodney Lawson
[1] The victim is referred to herein by her initials in accordance with this court's established policy.
[2] We acknowledge that the Ohio Supreme Court's recent decision inState v. Kalish, Slip Opinion No. 2008-Ohio-4912, sets forth a two-prong test for review of sentences. We note that Kalish is a plurality opinion; therefore, it is merely persuasive. *Page 1