[Cite as *State v. Buchanan*, 2018-Ohio-1086.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 105706**

**STATE OF OHIO**

PLAINTIFF-APPELLEE

vs.

**ERIC D. BUCHANAN**

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-16-605774-A

**BEFORE:** Jones, J., McCormack, P.J., and Keough, J.

**RELEASED AND JOURNALIZED:** March 22, 2018

**ATTORNEY FOR APPELLANT**

Susan J. Moran
55 Public Square, Suite 1616
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor

BY: Steven N. Szelagiewicz
Assistant County Prosecutor
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113


LARRY A. JONES, SR., J.:

{¶1} Defendant-appellant Eric Buchanan ("Buchanan") appeals his convictions for rape, kidnapping, and felonious assault. He also appeals his sentence and sexual offender classification. For the following reasons, we affirm.

## I. Procedural History and Trial

{¶2} Buchanan was charged in an eight-count indictment with rape, attempted rape, kidnapping, aggravated robbery, and felonious assault. Each count included a notice of prior conviction and the following specifications: one- and three-year firearm, repeat violent offender ("RVO"), sexual motivation, and sexually violent predator.

{¶3} The matter proceeded to a trial by jury with the exception of the sexually violent predator and repeat violent offender specifications, which were tried to the court. The following pertinent evidence was presented.

{¶4} On February 18, 2013, 17-year-old D.F. was waiting for the city bus when a man she did not know approached the bus stop. He stood at the stop for about ten minutes before he walked closer to D.F. and demanded her purse. D.F. gave the man, later identified as Buchanan, her purse and cell phone. Buchanan threatened to shoot D.F. if she ran or looked at him. D.F. testified that she never saw a gun but Buchanan had his hands in his pocket like he was holding something, so she thought he had a gun.

{¶5} Buchanan told D.F. to stand up so he could see her buttocks. D.F. refused, but Buchanan threatened to kill her, so she finally complied. She could see out of the corner of her eye that he was masturbating. Buchanan told D.F. he would give her the purse back but she had to walk with him because there were too many people around the bus stop. He grabbed her arm and walked her down a side street. D.F. testified she did not think she could break away from Buchanan because he held her arm tightly.

{¶6} Buchanan took D.F. to a nearby parked van. He opened the door, forced her inside, and told her to take her clothes off. D.F. refused, so Buchanan pulled her pants down to her knees.

{¶7} D.F. saw people walking past the van and tried to knock on the van's window to attract their attention. In response, Buchanan punched D.F. in the face, knocking her glasses off. According to D.F., she lost consciousness. Buchanan then got on top of D.F. and put his penis in her vagina. D.F. testified that if she did not let Buchanan have sex with her, he would kill her.

{¶8} When he was finished, Buchanan told D.F. to put her clothes back on and allowed her to leave the van. D.F. flagged down a city bus and the bus driver drove her to her street. Once D.F. got off of the bus, she began to run down the street. Her mother and grandmother

met her halfway between the bus and home. By the time they all arrived home, the police and ambulance were at D.F.'s house. According to D.F., the next thing she remembered was waking up in the hospital.

{¶9} Sexual Assault Nurse Examiner ("SANE") Kathleen Goellnitz ("Nurse Goellnitz") examined D.F. Nurse Goellnitz noted injuries to D.F.'s face that were consistent with being punched in the face while wearing glasses. D.F. told the nurse that she had been waiting at the bus stop when a man took her belongings, threatened to shoot her, took her to his van, punched her in the eye, and raped her. He did not use a condom.

{¶10} Cleveland Police Officer Timothy McGinty responded to D.F.'s house. She described her assailant to him as a 27-year old black male, six feet tall, 200 pounds, with a medium complexion. D.F. said the man wore a brown hat and coat.

{¶11} Christina Lekova ("Lekova"), a DNA analyst with Cuyahoga County Forensic Science Laboratory, processed D.F.'s rape kit. But when Lekova made the comparison between D.F.'s DNA standard and the samples in the rape kit, she discovered that D.F.'s sample did not match the sample in the kit. Lekova explained that meant that something went wrong in the testing process. Lekova retraced her steps and redid the test. Once the samples were re-extracted, Lekova explained, she was able to get a DNA profile.

{¶12} Lekova testified that the sample extractions are conducted by a semi-robotic system and the mistake occurred either because the initial tubes were not loaded in the correct order or the final order of the tubes was not correct. According to Lekova, the tubes were labeled correctly, but were not in the correct order. Lekova explained that the mistake did not affect the final results because she repeated the entire process and the reported results were based on the second test.

{¶13} Dr. Nasir Butt ("Dr. Butt"), the DNA unit supervisor, testified that after Lekova discovered an error in the testing process, the lab took corrective action by redoing the test. He explained that during the corrective action, the lab analyst tries to narrow down where the mistake may have occurred. Once the mistake is identified, the analyst discards the entire original batch of sample and the lab does not use any data from that batch. In situations such as these, Dr. Butt testified, he monitors the activity of the analyst to ensure the mistake is not repeated. Dr. Butt also testified that any mistake with the original testing would not have an effect on the final result.

{¶14} Lekova testified that the results of the second test produced an unknown profile, which meant there was someone else's DNA in the sample. Lekova testified that when this happens, she requests reference samples from the police so a comparison can be made. In this case, the unknown profile came from a sperm fraction of D.F.'s vaginal swab and anal swab.

{¶15} Cleveland police sex crimes detective Richard Durst ("Detective Durst") was assigned to the case. He interviewed D.F. at the police station and noted that she appeared upset, nervous, and afraid. The detective developed Buchanan as a suspect through "various leads," and interviewed him. Buchanan denied having sex with D.F. Detective Durst obtained buccal swabs from Buchanan. The reference sample from Buchanan matched the unknown profile in D.F.'s rape kit.

{¶16} D.F. testified she slept with her grandmother for five months after the rape. D.F.'s mother testified that after the rape her daughter became angry, depressed, frustrated, and lonely.

{¶17} After the state's presentation of evidence, defense counsel requested an acquittal of charges pursuant to Crim.R. 29. One count of felonious assault was dismissed. The jury

subsequently convicted Buchanan of two counts of kidnapping, one count of rape, and one count of felonious assault. The jury acquitted Buchanan of aggravated robbery. The jury convicted him of the accompanying sexual motivation specifications but acquitted him of all firearm specifications. The trial court acquitted Buchanan of the sexually violent predator specifications.

{¶18} At the sentencing hearing, the court determined that the two kidnapping convictions merged for the purposes of sentencing, but the rape and kidnapping convictions did not merge. The court further found that the remaining count of felonious assault and the rape conviction would not merge. The court sentenced Buchanan to 11 years for rape and an additional 10 years on the RVO specification, 9 years for kidnapping, and 6 years for felonious assault. The court determined that the felonious assault sentence would run concurrent with the rape conviction but the kidnapping would run consecutive to the rape, for a total sentence of 30 years in prison. The court classified Buchanan as a Tier III sex offender.

## II. Assignments of Error

{¶19} Buchanan filed a timely notice of appeal and raises five assignments of error for our review:

> I: The trial court erred by denying Appellant's motion for acquittal pursuant to Crim.R. 29 when the State failed to submit sufficient evidence for the essential elements of the crime charged, denying the Appellant of due process.
>
> II: Appellant's convictions are against the manifest weight of the evidence.
>
> III: The trial court committed prejudicial error and/or plain error in violation of the double jeopardy clause of the United States Constitution and Section 10, Article I, of the Ohio Constitution when it failed to merge rape and kidnapping as they were allied offenses of similar import and were committed with the same animus.
>
> IV: The trial court erred in imposing consecutive sentences as such a sentence

was not supported by the record.

V: The trial court erred in imposing a 10-year repeat violent offender specification.

### III. Law and Analysis

{¶20} In the first assignment of error, Buchanan contends that there was insufficient evidence to support his convictions.

{¶21} Sufficiency of the evidence is a legal standard that tests whether the evidence is legally adequate to support a verdict. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). In determining whether the evidence is legally sufficient to support a conviction, "'[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Robinson*, 124 Ohio St.3d 76, 2009-Ohio-5937, 919 N.E.2d 190, ¶ 34, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. A verdict will not be disturbed unless, after viewing the evidence in a light most favorable to the prosecution, it is apparent that reasonable minds could not reach the conclusion reached by the trier of fact. *State v. Treesh*, 90 Ohio St.3d 460, 484, 739 N.E.2d 749 (2001).

{¶22} In a sufficiency of the evidence inquiry, appellate courts do not assess whether the prosecution's evidence is to be believed but whether, if believed, the evidence supports the conviction. *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, 767 N.E.2d 216, ¶ 79-80 (evaluation of witness credibility not proper on review for sufficiency of evidence). Further, the testimony of "one witness, if believed by the jury, is enough to support a conviction." *State v. Strong*, 10th Dist. Franklin No. 09AP-874, 2011-Ohio-1024, ¶ 42.

**{¶23}** Buchanan argues that there was insufficient evidence to convict him of felonious assault, in violation of R.C. 2903.11(A)(1), which provides that "[n]o person shall knowingly * * * cause serious physical harm to another or to another's unborn." He claims that the state failed to provide sufficient evidence that D.F. suffered serious physical harm. We disagree.

**{¶24}** Serious physical harm is defined in R.C. 2901.01(A)(5) as:

(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;

(b) Any physical harm that carries a substantial risk of death;

(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;

(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;

(e) Any physical harm that involves acute pain of such duration as to result in

substantial suffering or that involves any degree of prolonged or intractable pain.

**{¶25}** A loss of consciousness, irrespective of its duration, satisfies the requirements for a temporary, substantial incapacity. *State v. Chambers*, 8th Dist. Cuyahoga No. 99864, 2014-Ohio-390, ¶ 23, citing *State v. Sales*, 9th Dist. Summit No. 25036, 2011-Ohio-2505, ¶ 19; *see also State v. Booker*, 2d Dist. Montgomery No. 22990, 2009-Ohio-1039, ¶ 16 (concluding "temporary unconsciousness constitutes a temporary substantial incapacity, and therefore serious physical harm"). Thus, a loss of consciousness may amount to serious physical harm even if the victim only loses consciousness for a short period of time.

**{¶26}** We do note some inconsistencies in D.F.'s testimony. She testified on direct examination that she "just laid there" after Buchanan punched her in the face and "let him take my pants off." She also testified that after Buchanan raped her, he told her that he had been

watching her for "a while." But she also testified that the punch rendered her unconscious. On cross-examination, D.F. stated that she remembered telling the detective that the punch knocked her unconscious, but, by the time of trial, she could not remember "it happening," i.e., the actual event of falling unconscious. D.F. testified that she would not have told the detective that she had lost consciousness unless she had, in fact, been punched unconscious:

Defense Counsel: Okay. And were you knocked unconscious, like you told Detective Durst?

D.F.: Again, I remember saying it, but I do not remember it happening.

Defense Counsel: Well, let me ask you this. Would you have said it if it didn't happen?

D.F.: No.

Defense Counsel: Are you sure?

D.F.: I'm positive.

Defense Counsel: So you remember saying it, right?

D.F.: Yes.

Defense Counsel: I'm just asking you, you didn't tell [the prosecutor] about that earlier, that he had hit you so hard that it knocked you unconscious, right?

D.F.: Yes.

Defense Counsel: And you remember saying that, but you don't know, or remember whether or not it actually occurred?

D.F.: Yes, because in the process of us being in the van and it happening, I remember getting hit, and after that, I don't remember anything happening after that, and leaving the van.

{¶27} On redirect, the state inquired:

Prosecutor: * * * [Y]ou remember saying that you were telling Detective Durst

that you were knocked out?

D.F.:   Yes.

Prosecutor:   Would you have made that up?

D.F.:   No.

Prosecutor:   And that was much closer in time to when this happened, right?

D.F.: Yes.

**{¶28}** Buchanan went to trial four years after the rape occurred.   By that time, D.F. did not remember that she had fallen unconscious.   But she also testified that she would not have made it up; thus, it was her belief at the time she gave her statement to police that the punch had rendered her unconscious.

**{¶29}** Looking at the evidence in a light most favorable to the state, we find that the state provided sufficient evidence of the element of "serious physical harm."

**{¶30}** Accordingly, the first assignment of error is overruled.

**{¶31}** In the second assignment of error, Buchanan claims that his convictions were against the manifest weight of the evidence.

**{¶32}** A court's function when reviewing the weight of the evidence is to determine whether competent, credible evidence allows a reasonable trier of fact to conclude that the state established all of the essential elements of the offense beyond a reasonable doubt.   *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541; *State v. Getsy*, 84 Ohio St.3d 180, 193-94, 702 N.E.2d 866 (1998).   To undertake such a review, the appellate court sits as a "thirteenth juror" and reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses, and determines whether the trier of fact clearly lost its way and created a manifest miscarriage of justice.   *Thompkins* at *id.*, citing *State v. Martin*, 20 Ohio

App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). Under this standard of review, an appellate court's discretionary authority "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at *id*.

{¶33} Buchanan contends that his conviction for felonious assault should be overturned because there was testimony that would support the conclusion that D.F. never lost consciousness.

{¶34} As mentioned under the first assignment of error, D.F. testified that she was knocked unconscious by Buchanan and that she did not remember some things as a result of the punch. D.F. testified on direct examination as to what happened after she was punched. On cross-examination, D.F. testified that she could not remember what happened after she was punched until she left the van. D.F. clarified this apparent contradiction by explaining that she remembered only "bits and pieces" of the assault, but would not have told the detective she had lost consciousness unless she had, in fact, lost consciousness. Thus, a reasonable jury could conclude that D.F. lost consciousness and suffered serious physical harm.

{¶35} Buchanan also argues that the question of identity is at issue because D.F. could not pick him out of a photo lineup and the DNA lab's test result were compromised due to mistakes by the lab technician.

{¶36} Although D.F. could not pick Buchanan out of a photo lineup, she positively identified Buchanan in court as the man who kidnapped and raped her. In *State v. Shields*, 8th Dist. Cuyahoga Nos. 39593 and 40794, 1979 Ohio App. LEXIS 11094 (Nov. 8, 1979), the defendant argued that the trial court erred in admitting an in-court identification by the victim because the victim was unable to positively identify the defendant in a lineup. *Id.* at 7. The defendant argued that state failed to present evidence that independently identified him. The

trial court disagreed and held that the fact that the victim had seen the defendant during the commission of the crime constituted an independent basis for the in-court identification.   *Id.*

{¶37} In this case, D.F. testified that she was unable to identify Buchanan in a photo lineup, but was able to identify him in court.   We find that D.F.'s inability to make a positive identification at the lineup affects the weight but not the admissibility of her in-court identification.   *See id.* at 7 – 8.   The jury heard D.F. testify as to her identification and it was up to the jury to decide what weight to give to her testimony.

{¶38} As to Buchanan's second contention, that the DNA test was flawed, Lekova testified that she had to take corrective action after she discovered an error in the original sampling of D.F.'s rape kit.   Lekova testified that the tubes from the rape kit were labeled correctly, but were put in the incorrect order.   Once she discovered the error, she started the entire sampling and analysis over again.

{¶39} Any error with the first test, both Lekova and Dr. Butt testified, did not affect the second test.   Moreover, neither test included Buchanan's DNA reference sample.

{¶40} Finally, Buchanan states that his convictions are against the manifest weight of the evidence because Detective Durst (1) lied to the grand jury in another case and (2) initially told Buchanan that D.F. was 14, not her actual age of 17.

{¶41} During cross-examination, counsel asked Detective Durst if there were other instances, unrelated to this present case, where he had been under oath and "made a mistake, or said something that was inaccurate."   Detective Durst answered that he had.   Counsel then asked if he had sworn out an arrest warrant in the present case that indicated that Buchanan forced D.F. into his car at gunpoint.   Detective Durst again answered that he had.   Defense counsel asked no follow-up questions related to the other case.

**{¶42}** On redirect, the detective clarified that he stated in his affidavit for an arrest warrant that D.F. had been held up at gunpoint because, based on the way D.F. explained the assault to him, he thought she actually saw Buchanan with a gun; "she told me in the interview she thought that he had a gun."

**{¶43}** During cross-examination, the detective also admitted he originally asked Buchanan if he had sex with a 14-year-old girl in his van, when the detective knew that D.F. was almost 18. Detective Durst explained that it is common to lie during interrogations to see what a suspect's response will be or in an attempt to get a suspect to make an admission.

**{¶44}** This court gives great deference to the factfinder's determination of the witnesses' credibility. *See State v. Williams*, 10th Dist. Franklin No. 02AP-35, 2002-Ohio-4503, ¶ 58. To that end, the factfinder is free to believe all, part, or none of the testimony of each witness appearing before it. *State v. Raver*, 10th Dist. Franklin No. 02AP-604, 2003-Ohio-958, ¶ 21. Mere disagreement over the credibility of witnesses is not sufficient reason to reverse a judgment. *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 24.

**{¶45}** Detective Durst was thoroughly cross-examined about his investigatory techniques. The jury was free to consider his testimony and determine what weight to give to it. Nothing in the record indicates the jury lost its way in finding that Buchanan was guilty beyond a reasonable doubt. In fact, the jury acquitted Buchanan of aggravated robbery and all weapons-related specifications.

**{¶46}** In light of the above, the second assignment of error is overruled.

**{¶47}** In the third assignment of error, Buchanan contends that the trial court erred in failing to merge his rape and kidnapping convictions for the purpose of sentencing.

**{¶48}** R.C. 2941.25(A) provides that "[w]here the same conduct by defendant can be

construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one." However,

> [w]here the defendant's conduct constitutes two or more offenses of dissimilar import, or where his [or her] conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

R.C. 2941.25(B).

**{¶49}** Buchanan argues his rape and kidnapping convictions were allied offenses of similar import that should have merged for sentencing because they involved the same conduct. However, in *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, the Ohio Supreme Court explained that an allied offenses analysis is not limited to just a consideration of the defendant's conduct. The *Ruff* court held that while an allied offenses analysis begins with an examination of the defendant's conduct, courts must also consider whether (1) the offenses are dissimilar in import or significance, (2) the offenses were committed separately, or (3) the offenses were committed with separate animus or motivation. *Id.* at paragraph three of the syllabus, citing R.C. 2941.25(B). Two or more offenses are of dissimilar import within the meaning of R.C. 2941.25(B) "when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *Id.* at paragraph two of the syllabus.

**{¶50}** The Ohio Supreme Court has recognized that "implicit within every forcible rape * * * is a kidnapping" because the victim's liberty is restrained during the act of forcible rape.

*State v. Logan*, 60 Ohio St.2d 126, 130, 397 N.E.2d 1345 (1979). The *Logan* court provided the following guidelines for determining whether rape and kidnapping are allied offenses that should merge for sentencing:

> (a) Where the restraint or movement of the victim is merely incidental to a separate underlying crime, there exists no separate animus sufficient to sustain separate convictions; however, where the restraint is prolonged, the confinement is secretive, or the movement is substantial so as to demonstrate a significance independent of the other offense, there exists a separate animus as to each offense sufficient to support separate convictions;

> (b) Where the asportation or restraint of the victim subjects the victim to a substantial increase in risk of harm separate and apart from that involved in the underlying crime, there exists a separate animus as to each offense sufficient to support separate convictions.

*Id.* at the syllabus.

**{¶51}** Both the state and Buchanan cite numerous cases to support their respective position and our research reveals several more. Buchanan cites to our recent decision in *State v. Lundy*, 8th Dist. Cuyahoga No. 105117, 2017-Ohio-9155, where the defendant forced the victim to move from a bus stop to a nearby yard where he raped her. He then let her go. This court found that the trial court erred when it failed to merge the kidnapping and rape convictions because the defendant's act of moving the victim from the bus stop to the nearby yard was brief, the movement was slight, and he released the victim immediately after the rape. This court noted the location the defendant removed the victim to was not "particularly secretive." *Id.* at ¶ 33.

**{¶52}** In *State v. Asadi-Ousley*, 8th Dist. Cuyahoga No. 104267, 2017-Ohio-7252, ¶ 47, the defendant removed the victim from the sidewalk to a nearby alleyway where he raped her. Although the alleyway was not far from where the victim had been walking, the defendant knocked the victim unconscious. We concluded that the movement from the sidewalk to the

alleyway was not "prolonged," or "substantial enough to demonstrate a separate animus for kidnapping apart from the rape under *Logan*." *Id.* at ¶ 51. However, the offenses did not merge because the defendant subjected the victim to an increased risk of harm that was separate and apart from the rape by knocking the victim unconscious. *Id.* at ¶ 52.

{¶53} In *State v. Lawson*, 8th Dist. Cuyahoga No. 90589, 2008-Ohio-5590, the defendant lured the victim outside the rapid station and robbed her before forcefully walking her through a parking lot, across a street, and behind a store where he raped the victim. This court found that the duration and distance from the rapid station to the store showed that the defendant committed the offenses of rape and kidnapping with separate animus. *Id.* at ¶ 39.

{¶54} In this case, D.F. testified that Buchanan waited at the bus stop for ten minutes before approaching her. He approached her and robbed her of her money, purse, and cell phone. Then he told her to stand up so he could see her buttocks and threatened to kill her when she refused. She noticed he was masturbating. Buchanan told her that she could have her stuff back "but it was too many people, so he grabbed my arm, and he walked me down the side street" to where his van was parked in front of a blue house. After they got to the van, Buchanan opened the door and pushed D.F. into the van. He told her to take off her clothes. When she refused, Buchanan "forcefully took my pants off down to my knees." D.F. tried to get the attention of people walking by knocking on the van windows, but Buchanan punched her in the face, knocking her glasses off and rendering her unconscious.

{¶55} After the rape, Buchanan let D.F. go and she ran toward the bus stop. She was able to get the bus to stop for her by running in front of the bus.

{¶56} Based on the above, we find that the kidnapping and rape were separate crimes performed with a separate animus. Buchanan forced D.F. to go to a secretive location, his van,

and then forced her inside where he raped her. This coupled with the punch to the face that caused her to lose consciousness is ample support for the trial court to find that the kidnapping and the rape were separate and distinct crimes.

{¶57} The third assignment of error is overruled.

{¶58} Because Buchanan's fourth and fifth assignments of error both address his sentence, they are addressed together. In the fourth assignment of error, Buchanan argues that the trial court erred by failing to consider the minimum sentence and in sentencing him to consecutive sentences. In the fifth assignment of error, Buchanan claims the court erred in imposing a ten-year sentence for the RVO specification.

{¶59} When reviewing Buchanan's felony sentence, this court may increase, reduce, modify a sentence, or vacate and remand for resentencing if we clearly and convincingly find that the record does not support the sentencing court's statutory findings under R.C. 2929.14(B)(2), or the sentence is contrary to law. R.C. 2953.08(G)(2). A sentence is contrary to law if (1) the sentence falls outside the statutory range for the particular degree of offense, or (2) the trial court failed to consider the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the sentencing factors in R.C. 2929.12. *State v. Hinton*, 8th Dist. Cuyahoga No. 102710, 2015-Ohio-4907, ¶ 10, citing *State v. Smith*, 8th Dist. Cuyahoga No. 100206, 2014-Ohio-1520, ¶ 13.

{¶60} Courts have "full discretion" to impose a sentence within the applicable statutory range. *State v. Collier*, 8th Dist. Cuyahoga No. 95572, 2011-Ohio-2791, ¶ 15, citing *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, paragraph seven of the syllabus. Therefore, a sentence imposed within the statutory range is "presumptively valid" if the court considered the applicable sentencing factors. *Id.*

**{¶61}** Buchanan contends that the court failed to consider the minimum sentence necessary under R.C. 2929.11(A). R.C. 2929.11(A) provides:

> A court that sentences an offender for a felony shall be guided by the overriding purposes of felony sentencing. The overriding purposes of felony sentencing are to protect the public from future crime by the offender and other and to punish the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources. To achieve those purposes, the sentencing court shall consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution of the victim of the offense, the public, or both.

**{¶62}** This court has held that "[a]lthough the trial court must consider the principles and purposes of sentencing as well as the mitigating factors, the court is not required to use particular language or make specific findings on the record regarding its consideration of those factors." *State v. Carter*, 8th Dist. Cuyahoga No. 103279, 2016-Ohio-2725, ¶ 15.

**{¶63}** The trial court stated at the sentencing hearing and in the sentencing journal entry that it considered the required statutory factors and the record confirms the trial court did consider those factors and the principles and purposes of sentencing.

**{¶64}** Buchanan further contends that the trial court failed to comply with the requirements of R.C. 2929.14(C)(4) in imposing consecutive sentences. We find no merit to this argument.

**{¶65}** "[T]o impose consecutive terms of imprisonment, a trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry * * *." *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 37. Pursuant to R.C. 2929.14(C)(4), the court must find consecutive sentences are "necessary to protect the public from future crime or to punish the offender"; "not disproportionate to the seriousness of the offender's conduct and to the danger

the offender poses to the public"; and at least one of the following three factors:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction * * *, or was under post-release control for a prior offense.

> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

> (C) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶66} In this case, the trial court indicated the reasons for consecutive sentences during the sentencing hearing and included them in the sentencing journal entry. The trial court stated in relation to the kidnapping conviction running consecutive to the rape conviction:

> [T]he court makes * * * the findings * * * to that consecutive sentences are * * * necessary to protect the public from future crime and to punish the offender and that the consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public.

> And there are some components that I have to find, any one of the three. One, in this situation is that the offender's criminal history and conduct demonstrates that consecutive sentences are necessary to protect the public from future crime from the offender.

{¶67} The trial court stated that it took into account Buchanan's criminal history and, as a result, found that a consecutive sentence was the most appropriate sanction to protect the public. After a review of the record, we find that the trial court stated its findings pursuant to R.C. 2929.14(C)(4), and, therefore, did not err in sentencing Buchanan to consecutive sentences.

{¶68} Buchanan also contends that his sentence is contrary to law because the trial court erred in enhancing his sentence under the RVO specification without making the requisite

statutory findings. Specifically, he contends that the record does not establish the criteria set forth in R.C. 2929.14(B)(2). We disagree.

{¶69} Under certain circumstances, which do not apply to this case, RVO sentencing is mandatory. *See* R.C. 2929.14(B)(2)(b). Buchanan qualified as a RVO under R.C. 2929.14(B)(2)(a):

> (a) If division (B)(2)(b) of this section does not apply, the court may impose on an offender, in addition to the longest prison term authorized or required for the offense, an additional definite prison term of one, two, three, four, five, six, seven, eight, nine, or ten years if all the following criteria are met:
>
> (i) The offender is convicted of * * * a specification of the type described in section 2941.149 of the Revised Code that the offender is a repeat violent offender.
>
> (ii) The offense of which the offender currently is convicted * * * is * * * any felony of the first degree that is an offense of violence and the court does not impose a sentence of life imprisonment without parole, or any felony of the second degree that is an offense of violence and the trier of fact finds that the offense involved an attempt to cause or a threat to cause serious physical harm to a person or resulted in serious physical harm to a person.
>
> (iii) The court imposes the longest prison term for the offense that is not life imprisonment without parole.
>
> (iv) The court finds that the prison terms imposed pursuant to division (B)(2)(a)(iii) of this section * * * are inadequate to punish the offender and protect the public from future crime, because the applicable factors under section 2929.12 of the Revised Code indicating a greater likelihood of recidivism outweigh the applicable factors under that section indicating a lesser likelihood of recidivism.
>
> (v) The court finds that the prison terms imposed pursuant to division (B)(2)(a)(iii) of this section * * * are demeaning to the seriousness of the offense, because one or more of the factors under section 2929.12 of the Revised Code indicating that the offender's conduct is more serious than conduct normally constituting the offense are present, and they outweigh the applicable factors under that section indicating that the offender's conduct is less serious than conduct normally constituting the offense.

{¶70} Buchanan was convicted of rape, felonious assault, and kidnapping. He stipulated

to his previous conviction. The trial court sentenced Buchanan to the maximum term on the rape charge. In satisfying the "recidivism and seriousness findings" under section R.C. 2929.14(B)(2)(a)(iv) and (v), the trial court stated:

On the RVO specification, the situation, as I view it with regard to Mr. Buchanan, that the full amount needs to be imposed because the sentence of just rape is inadequate to punish the offender and to protect the public from future crime. There's a greater likelihood of recidivism, and the applicable factors with regard to the seriousness of his conduct [are] greater than the factors dealing with the less serious aspects of his conduct with regard to this charge.

**{¶71}** The trial court further stated: "Mr. Buchanan, just in closing, I think the maximum sentences on the RVO and the rape given the circumstances with the felonious assault and the kidnapping were obviously warranted and justifiable or I would not have made the finding."

**{¶72}** There are no magic words the trial court is required to recite when making RVO findings under R.C. 2929.14(B)(2)(a). *State v. Watts*, 8th Dist. Cuyahoga No. 104269, 2017-Ohio-532, ¶ 11. As long as the reviewing court can discern from the record that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, the sentence on the RVO specification should be upheld. *Id.* at ¶ 12.

**{¶73}** Upon review of the record, this court concludes that the trial court considered the appropriate recidivism and seriousness factors, made the required findings, gave the necessary reasons for its findings, and properly applied the statutory guidelines before sentencing Buchanan to an additional ten years on the repeat violent offender specification. Accordingly, we clearly and convincingly find that the record supports the sentence, and that the sentence is not contrary

to law.

**{¶74}** The fourth and fifth assignments of error are overruled.

**{¶75}** Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LARRY A. JONES, SR., JUDGE

TIM McCORMACK, P.J., and
KATHLEEN ANN KEOUGH, J., CONCUR